NELLIE COOPER, Appellee, v. THE SCOTT COMPANY, Appellant.

**Sales:** BREACH OF WARRANTY: DAMAGES. In this action for breach of warranty of a heating plant installed in plaintiffs residence, the evidence tended to show that if the plant had been constructed as agreed it would have been worth from $400 to $450 and that it was in fact worth only from $150 to $175. *Held,* that the court was justified by the evidence in reducing the verdict from $350 to $275.

Same: EVIDENCE.  Evidence held to require a submission of the issues of breach of warranty in installing a heating plant for plaintiff, and of the proper handling of the plant by plaintiff.

Same: HEATING CONTRACT: PERFORMANCE.  A heating contract providing that the boiler and radiators shall be of sufficient capacity to heat the building, requires the installation of a plant when constructed that will produce the required result:  The mere furnishing of an adequate boiler and proper radiators is not a compliance with the contract.

*Appeal from Oelwein Superior Court.*—Hon. M. D. Porter,  Judge.

Wednesday, April 7, 1909.

Rehearing Denied Wednesday, September 29, 1909.

Action to recover damages upon a breach of warranty of a heating plant furnished by defendant to plaintiff for the purpose of warming her residence.   Defendant admitted the making of the warranty, but pleaded certain defenses which will be noted in the body of the opinion. Upon the issues tendered the case was tried to a jury, which resulted in a verdict for plaintiff, and defendant appeals.—*Affirmed.*

*Jay Cook,* for appellant.

*C. H. Rohrig* and *G. W. Backus,* for appellee.

Deemer, J.—On September 12, 1904, defendant made a written proposition to plaintiff for installing a heating plant in her residence.  Among other things contained in this proposal were the following:  "This heater, when properly set and connected to a good flue of proper size and of a sufficient height, not to be affected by adverse winds, will be capable of burning the soot out so clean that it will not clog up the fire surfaces so as to have

to be scraped or cleaned out, even when using common Iowa soft, unscreened coal. We guarantee the boiler and radiators of sufficient capacity to heat the above-described rooms to a comfortable degree of temperature in the coldest winter weather by the proper firing and handling of the plant. Upon notification from us that the work herein specified is complete it shall be promptly inspected and accepted or rejected, so that our man, while his tools are still on the premises, may, without delay, complete it or remedy any defect that may appear, after which you are to give said man a written receipt for the apparatus herein specified. If not inspected immediately on completion, the apparatus will be left in your charge, and our responsibility for it ceases. Failure to so promptly inspect and accept or reject said work shall be construed as an acceptance of said work and shall entitle us to payment according to contract. In case any part of this apparatus shall show defects of material within eight years, we agree, on delivery of such defective part to us at our factory, to give you a duplicate part instead without charge. The term 'defect,' as above used, shall not be construed as embracing any imperfections as would naturally follow improper treatment, accident, or the wear or tear of use. We agree to furnish the heating apparatus herein specified for the sum of $250.52, payable at our office as follows: $83.51 on delivery of the heater and radiators; $83.51 in thirty days or not later than ninety days; balance within sixty days (mailing invoice by us to be sufficient notice). The payment of each of the above sums at the time and at the place named is the basis of this entire proposal and is the essence of the contract between us." This proposition was accepted by plaintiff on the 12th of September, 1904, and defendant almost immediately commenced work and completed the same on or about November 25, 1904. On or about the last-named date, plaintiff paid the contract price, to wit, $250.52. In her petition plaintiff alleges

that the apparatus was not of sufficient capacity to heat the rooms, that it was improperly constructed and installed, that the pipes were not of sufficient capacity, that they leaked, and that the plant as a whole was entirely worthless. She also pleaded that she discovered the defects on or about January 10, 1905, and that she thereupon demanded of defendant the return of the purchase price. She further averred that, if the plant had been properly installed, it would have been worth $450, and she claimed damages in the sum of $600. Defendant denied that there was any breach of the contract or of the warranties, alleged a full settlement and voluntary payment of the purchase price, averred that whatever defects there may be in the plant were due to plaintiff's improper handling and firing of the plant, and that plaintiff failed to comply with any of the conditions of the contract on her part except to pay the purchase price. On these issues the jury returned a verdict for plaintiff in the sum of $350, which, upon motion for a new trial, was reduced to the sum of $275, and defendant appeals.

The main contention for appellant is that the verdict is without support in the testimony and is contrary to the instructions given by the court.

Among other instructions given by the court were the following:

Inst. 3. This is an action for a breach of warranty, and you are instructed that the burden is upon the plaintiff to prove by a preponderance of the evidence that such warranty has been broken. The burden is upon the plaintiff to prove that the heating plant was properly fired and handled. If you find that the plaintiff has proven by a preponderance of the evidence that the plant was properly fired and handled, and with such proper firing and handling that said plant would not heat the rooms to a comfortable degree of temperature as warranted, then your verdict will be for the plaintiff.

Inst. 4. It is admitted in the pleadings that plaintiff

paid for the heating plant. If you find from a preponderance of the evidence that, at the time of the payment by the plaintiff, the plaintiff had not had the opportunity to test said plant to ascertain whether the plant would heat as guaranteed, then you are instructed that the fact of payment would in no way affect plaintiff's right to recovery on the guarantee.

Inst. 5. If you find for the plaintiff, then you will turn to the matter of damages, and you are instructed that the damages plaintiff is entitled to recover will be the difference between the value of the heating plant as warranted and its value as it actually was. You are to arrive at your verdict solely by the evidence that has been offered and received upon the trial, being governed by the instructions of the court. You should permit nothing else to influence you.

Claim is made that there was no evidence to support a verdict based upon the fifth instruction. In this counsel are in error. There was testimony showing that the plant, if it had been constructed as agreed, would have been worth $400 to $450, and that as it was it was worth from $150 to $175. ' One of the witnesses testified that the plant as constructed was worthless. The verdict was for $350, but this was reduced by the court to $275. The jury was not bound absolutely to the values fixed by the different witnesses, and of the verdict as reduced by the trial court defendant may not justly complain.

1. SALES: breach of warranty: damages.

Further claim is made that plaintiff produced no evidence to show that the plant was properly fired and handled, and that under instruction three there should have been a verdict for defendant. Here again counsel is mistaken as to the record. There is testimony showing that the plant did not comply with the warranty in that it was a cheap job, joints not properly put together, and the reduction therein so great that it was impossible to get circulation through the pipes. There was ample testimony to show that the system was prop-

2. SAME: evidence.

erly ·handled and fired according to defendant's directions. It also appears that the outgoing pipe was attached to the bottom, instead of the top, of the boiler and the return pipe to the top, that there was an expansion tank in the house, and that on account of defects in the construction sufficient heat could not be had from the radiators to warm the house. There was also testimony to the effect that defendant through its agents admitted that there was something wrong with the plant, and that upon trial they could not make it work. The jury may very well have found from the record that as constructed there was not sufficient radiation, or that the boiler was insufficient to do the work. There was testimony to the effect that the boiler pipes and radiators leaked, and that the plant never would heat the house in cold weather. One witness, a member of defendant company, said there must be something wrong with the plant, and that he would take it out and put in a new one if plaintiff would pay for the new and give him the old one. Another witness testified that one of defendants promised to put the plant in shape if plaintiff would release him from damages. This was enough, as we think, to take the case to the jury upon the question of breach of warranty and as to plaintiff's handling of the plant.

Counsel seem to think that if defendant furnished a boiler sufficient in size and proper radiators to heat the house this was all that was required, although the boiler and radiators as joined together· and con-

3. SAME: heating contract: performance. structed would not furnish any heat; but this is not a proper construction of the guaranty. If the proposition were true, defendant might place the boiler in the cellar and the radiators in the rooms and contend that it had complied with its warranty. The boiler capacity and radiation referred to was a boiler and sufficient radiators which, when constructed and joined· together, would produce the results promised. That they

did not do so, has ample support in the testimony. "Radiation" means something more than radiators. Radiation refers to heating capacity of the radiators when connected up with the boiler.. That there was not enough radiation to heat the rooms as promised has ample support in the testimony.

Instruction No. 9 has no bearing upon the substantive law of the case and in itself amounts to nothing in so far as this appeal is concerned.

There is no prejudicial error, and the judgment must be, and it is, *affirmed.*